IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GERARDO GONZALEZ-PEREZ,           §
                                  §
                    Plaintiff,    §
                                  §     Civil Action No. 3:24-CV-2121-D
VS.                               §
                                  §
UNIVERSAL CHAIN OF TEXAS, LLC,    §
                                  §
                    Defendant.    §

MEMORANDUM OPINION
AND ORDER

In this suit by plaintiff Gerardo Gonzalez-Perez ("Gonzalez") alleging claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq.* (West 2021), defendant Universal Chain of Texas, LLC ("UChain") moves for summary judgment. Concluding that Gonzalez has not created a genuine issue of material fact as to any of his claims and that UChain is entitled to judgment as a matter of law, the court grants UChain's motion for summary judgment and dismisses this action with prejudice by judgement filed today.

I

During the events that are the subject of this lawsuit,[1] UChain was a third-party logistics partner that provided freight handling labor to distribution centers and financial

---

[1]UChain states in its reply that the company operating as UChain is no longer in business.

transactions systems.[2]  On January 31, 2022 UChain hired Gonzalez as a freight handler in the produce section of UChain's Tom Thumb distribution center.  During his onboarding, Gonzalez completed an Employment Eligibility Verification Form I-9 ("I-9 Form"), providing his Social Security and Alien Registration/USCIS numbers and indicating that he was an alien authorized to work in the United States.

On February 22, 2022 Gonzalez was injured at work while operating a forklift. UChain immediately notified its workers' compensation carrier, The Cincinnati Insurance Companies ("Cincinnati"), so that Gonzalez could receive medical care under UChain's policy.  On February 25, 2022 Gonzalez was released to return to work with restrictions.  In light of these restrictions, UChain offered Gonzalez a modified duty assignment consisting of seated administrative work that included the review of safety and food distribution videos and documentation of forklift safety.  Gonzalez was instructed to return to work on March 8, 2022, which he did.

After Gonzalez returned to work, Yazmin Tafolla ("Tafolla"), a recruiter at UChain, overheard Director of Operations Adrian Ortiz ("Ortiz") complain about Gonzalez's light duty assignment.  Ortiz complained that UChain was "losing a lot of money for [Gonzalez] to sit and watch videos all day," and stated, "[w]e're gonna have to deal with him for more than six months, I don't know how we're gonna deal with it."  P. Br. (ECF No. 22) at 4

---

[2]The court recounts the evidence in the light most favorable to Gonzalez, as the summary judgment nonmovant, and draws all reasonable inferences in his favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citation omitted).

(citing P. App. at Ex. A ¶¶ 21, 22).[3]

On March 29, 2022 UChain's Safety Department received an email from Cincinnati informing UChain that it had discovered that the social security number Gonzalez provided during his onboarding was registered to two other individuals and had been issued prior to Gonzalez's date of birth. Cincinnati advised UChain that, because of these issues, it would discontinue paying Gonzalez any temporary income benefits but would pay for Gonzalez's reasonable and necessary medical treatment, as required by Texas workers' compensation law.

The following week, UChain sent Gonzalez a letter informing him that UChain had been notified that his Social Security number did not match UChain's records and requesting that Gonzalez promptly contact UChain so that it could resolve the discrepancy. Gonzalez failed to respond. On June 17, 2022 UChain again contacted Gonzalez, this time via email, and advised him that this was the second attempt to contact him regarding the incorrect Social Security number that the company had on file for him. UChain attached the original correspondence, requested that Gonzalez respond within 30 days, and warned him that his failure to do so could result in termination. Gonzalez again did not respond. On July 27, 2022 UChain sent Gonzalez the same letter translated into Spanish, hand delivered the letter to Gonzalez at work, and provided him one additional week to provide the previously

---

[3]Gonzalez's appendix does not comply with the requirements of N.D. Tex. Civ. R. 56.6(b)(3), which requires that each page of the appendix be sequentially numbered. Accordingly, the court will refer to citations in Gonzalez's appendix by exhibit letter.

requested information.  That same day, Gonzalez furnished a Social Security card with the same number that he had provided on his I-9 Form.

On July 28, 2022 UChain terminated Gonzalez's employment.  It posits that it did so because it had provided Gonzalez significant time to correct the invalid Social Security number or present evidence from the Social Security Administration that he was attempting to resolve the issue, and Gonzalez failed to do so.  UChain maintains that the decision to terminate Gonzalez was made entirely by UChain's Human Resources Department based on his ineligibility to work.

After exhausting his administrative remedies, Gonzalez filed the instant lawsuit alleging claims for disability discrimination under the ADA and TCHRA, failure to accommodate under the ADA and TCHRA, wrongful termination under the ADA and TCHRA, and retaliation under the ADA.  UChain moves for summary judgment on all of Gonzalez's claims.  Gonzalez opposes the motion, which the court is deciding on the briefs.

## II

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence

- 4 -

is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet his burden. *Little*, 37 F.3d at 1076.

### III

The court begins with Gonzalez's claim that UChain discriminated against him based on his disability, in violation of the ADA and TCHRA.

### A

The ADA[4] mandates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prove his discrimination claims, Gonzalez can rely on direct or circumstantial evidence. *See, e.g., King v. DFW Int'l Airport Bd.*, 2023 WL 6543533, at *3 (N.D. Tex. Oct. 6, 2023) (Pittman, J.) ("There are two avenues available for an employee to show ADA discrimination with respect to termination: (1) the employee can present direct evidence; or (2) they can rely on

---

[4]Although Gonzalez brings this claim under both the ADA and the TCHRA, the court for convenience will refer to the claim as if it were brought only under the ADA because substantially the same law applies to both claims. *See, e.g., Gober v. Frankel Family Tr.*, 537 Fed. Appx. 518, 520 (5th Cir. 2013) (per curiam).

circumstantial evidence and then shift the burden to the employer to provide explanation."),
*aff'd*, 2024 WL 4132676 (5th Cir. Sept. 10, 2024).  Direct evidence is "evidence that, if
believed, proves the fact of discriminatory animus without inference or presumption."
*Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Sandstad v. CB
Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).  If Gonzalez lacks direct evidence of
disability discrimination, he can proceed under the familiar *McDonnell Douglas*[5] burden-
shifting framework.  *Sol v. City of Dallas, Tex.*, 2024 WL 780431, at *3 (N.D. Tex. Feb. 26,
2024) (Scholer, J.) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 2014)).

B

Gonzalez contends that Ortiz's statements that UChain was "losing a lot of money for
[Gonzalez] to sit and watch videos all day," and that "[w]e're gonna have to deal with him
for more than six months, I don't know how we're gonna deal with it," constitute direct
evidence of discrimination.  When a plaintiff offers remarks as direct evidence, courts apply
a four-part test to determine whether the comments are sufficient to overcome a motion for
summary judgment.  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing
*Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).  For a workplace comment to
qualify as direct evidence of discrimination, in violation of the ADA, it must be: (1) related
to the protected class of which plaintiff is a member; (2) proximate in time to the termination;
(3) made by an individual with authority over the adverse employment decision; and (4)

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

related to the employment decision. *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001).

The court concludes below that a reasonable jury could not find that Ortiz was involved in the decision to terminate Gonzalez's employment. For this reason alone Ortiz's comments do not constitute direct evidence of disability discrimination. But even if Ortiz *had* been involved in the termination decision, his comments would still not qualify as direct evidence of disability discrimination. This is so because they do not prove the fact of UChain's discriminatory animus without inference or presumption or allow a reasonable trier of fact to find, without any inferences or presumptions, that Gonzalez's disability was an impermissible factor in the termination decision. Ortiz's statements, which were made months before UChain terminated Gonzalez's employment, do not suggest terminating Gonzalez and "could also be interpreted to suggest that Ortiz felt [Gonzalez] could be assigned other light duty jobs within his restrictions." D. Br. (ECF No. 19) at 12. An inferential leap is required to arrive at the conclusion that UChain discharged Gonzalez out of discriminatory animus against him based on his disability. Therefore, proof of Ortiz's statements is not direct evidence of disability discrimination against Gonzalez.

C

Absent direct evidence of disability discrimination, Gonzalez can prove discrimination using the modified *McDonnell Douglas* approach. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (holding that *McDonnell Douglas* framework applies to ADA cases when only circumstantial evidence of discrimination is offered). As modified, *McDonnell Douglas* consists of three stages. First, Gonzalez must establish a prima facie case of discrimination, which "creates a presumption that [UChain] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citation omitted).

Second, if Gonzalez establishes a prima facie case, the burden shifts to UChain to produce evidence of a legitimate, nondiscriminatory reason for the employment action taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). UChain's burden is one of production, not proof, and involves no credibility assessments. *See, e.g.*, *West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 385 (5th Cir. 2003).

Third, if UChain meets its production burden by producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action, "the presumption of discrimination created by [Gonzalez's] prima facie case disappears," *Machinchick v. PB Power, Inc*., 398 F.3d 345, 350 (5th Cir. 2005), and "the burden shifts back to [Gonzalez] to

make an ultimate showing of intentional discrimination," *Campbell v. Zayo Grp., LLC*, 2015 WL 3903539, at *3 (N.D. Tex. June 25, 2015) (Fitzwater, J.) (quoting *Reed*, 701 F.3d at 439).    Gonzalez must show that the legitimate, nondiscriminatory reason proffered by UChain "[is] not its true reason[], but [was] a pretext for discrimination."    *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009).[6]

These three steps constitute the *McDonnell Douglas* framework.    "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

---

[6]The inquiries under the ADA and TCHRA are identical under the first and second stages of the modified *McDonnell Douglas* framework. *See, e.g.*, *Mathis v. BDO USA, LLP*, 2014 WL 975706, at *3 (S.D. Tex. Mar. 12, 2014).  At the third step of the *McDonnell Douglas* framework, however, Gonzalez can survive summary judgment on his claim under the TCHRA by producing evidence that would enable a reasonable trier of fact to find that, even if UChain's reason were true, his disability was another motivating factor. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("The plain meaning of this statute establishes 'a motivating factor' as the plaintiff's standard of causation in a TCHRA unlawful employment practice claim, regardless of how many factors influenced the employment decision.").  But the difference between these two standards is immaterial here because Gonzalez has only attempted to show that UChain's proffered legitimate, nondiscriminatory reason is pretextual.

D

The court will assume, without deciding, that Gonzalez has established a prima facie case of disability discrimination. The burden therefore shifts to UChain to articulate a legitimate, nondiscriminatory reason for Gonzalez's termination. UChain has met this burden by producing evidence that it terminated Gonzalez's employment because he failed to demonstrate, through a non-fraudulent Social Security number, that he was authorized to work in the United States.

E

Because UChain met its burden of production, the burden shifts back to Gonzalez to produce sufficient evidence for a reasonable jury to find that UChain's articulated reason is pretextual. Gonzalez has not met this burden.

1

In his summary judgment response, Gonzalez does not dispute that he failed to demonstrate that he was authorized to work in the United States. He instead argues that UChain's selective enforcement of immigration requirements against him is "strong evidence" of pretext because UChain "had a documented practice of knowingly hiring undocumented workers and directing HR personnel to accept questionable documentation," and "UChain's sudden concern with [his] work authorization after years of deliberate indifference to such matters suggests that immigration status was not the real reason for his termination." P. Br. (ECF No. 22) at 15. In support, he cites the declaration of Tafolla, in which she avers that when she reported to Ortiz that an applicant's identification documents

submitted with his I-9 Form appeared to be fake, Ortiz told her, on two to three occasions, to accept whatever the applicants brought, "no questions asked," and that during her time at UChain, she "believe[s] [she] hired between 30 to 38 employees, nearly all of whom were undocumented." P. App. at Ex. A ¶¶ 10, 17. Gonzalez also relies on his own declaration, in which he states that he observed that UChain employed many other immigrants and that "[i]t was [his] understanding based on workplace conversations that many of these workers were undocumented." P. App. at Ex. B ¶ 4.

Even if the court accepts as true Gonzalez's evidence that Ortiz encouraged the hiring of undocumented workers at UChain's Roanoke, Texas location and that Tafolla hired between 30 and 38 undocumented workers during her employment at UChain, this would not permit a reasonable jury to find that UChain's proffered reason for Gonzalez's termination—i.e., his inability to demonstrate that he was authorized to work in the United States—was pretext for disability discrimination. This is because Gonzalez has not adduced any evidence that the individuals *responsible for his termination*, i.e., UChain's corporate Human Resources managers, "had a documented practice of knowingly hiring undocumented workers" P. Br. (ECF No. 22) at 15 (citing P. App. at Ex. A), or that they "selectively" enforced UChain's immigration requirements only against Gonzalez. In fact, the undisputed evidence[7] shows that, when UChain discovered, as a result of a 2023 I-9 audit, that three of

---

[7]Gonzalez argues in his response that the low number of terminations resulting from the audit, "compared to Tafolla's testimony that she alone hired 30-38 undocumented workers raises questions about the thoroughness and legitimacy of UChain's audit." P. Br. (ECF No. 22) at 16. But Gonzalez does not dispute that UChain terminated the three

its 400 employees were not authorized to work in the United States, UChain terminated those employees.  Neither Gonzalez nor Tafolla has identified any employees whom UChain retained despite "actual notice (or even knowledge) that they were undocumented." D. Reply (ECF No. 23) at 4.

2

Gonzalez next argues that Ortiz's complaints about the cost and duration of his accommodations "provide direct evidence that disability-related concerns, not immigration status, motived the adverse employment action . . . [and] directly reveal UChain's disability-based discriminatory animus." P. Br. (ECF No. 22) at 16.  He contends that UChain's claim that Ortiz was not involved in the termination decision contradicts evidence that Ortiz was a key management figure with direct supervisory authority over employees like Gonzalez. He argues under the "cat's paw" theory that Ortiz

> directly supervised [Gonzalez], evaluated his performance, was involved in scheduling his work, and had influence over hiring and firing decisions.  The evidence, viewed in the light most favorable to [Gonzalez], supports a reasonable inference that Ortiz's complaints about the costs of [Gonzalez]'s accommodations soon before the termination influenced the decision to scrutinize his immigration status after years of deliberate indifference to such matters.

*Id.* at 10-11.

Under the "cat's paw" theory, "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the

employees that it discovered were unauthorized to work in the United States.

"cat's paw," for the subordinate employee's prejudice.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). "To invoke the cat's paw analysis, [a plaintiff] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decisionmaker.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell*, 235 F.3d at 227). Gonzalez has failed to create a genuine issue of material fact with respect to the second condition.

In support of its summary judgment motion, UChain maintains that

> Ortiz was not involved in Perez's onboarding process and did not have any discussions with UChain's Human Resource managers regarding Perez's submission of a fraudulent Social Security number. The decision to terminate Perez was made entirely by UChain's Human Resource managers, based on Perez's ineligibility to work in the United States. Ortiz had no role in the decision to terminate Perez.

D. App. (ECF No. 20-1) at 9. Gonzalez has failed to produce sufficient summary judgment evidence to refute this contention or otherwise to permit a reasonable jury to find that Ortiz possessed leverage or exerted influence over the titular decisionmakers, i.e., UChain's Human Resource managers. He offers only his unsupported, speculative statement that "it is my understanding, based on what I saw and heard, that Mr. Ortiz had influence over hiring and firing decisions at the facility." P. App. at Ex. B ¶ 21. But this is insufficient. *See, e.g.*, *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden

in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc))).

                                        3

Gonzalez also relies on the timing of UChain's investigation into his Social Security number (i.e., shortly after he was injured and required accommodations), as evidence to support an inference of pretext.  He maintains that, "[i]f UChain was genuinely concerned with immigration compliance, it would have verified his documentation before hiring him or as part of a company-wide verification process, not selectively after he became disabled." P. Br. (ECF No. 22) at 16.

The Fifth Circuit has held that "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment."  *Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)).  Gonzalez is correct that there is some correlation between the date on which he became disabled (February 22, 2022) and the date, approximately one month later, when UChain began to investigate his immigration status. But there is an alternative explanation for the timing of UChain's investigation that is wholly consistent with UChain's reason for terminating Gonzalez.  The undisputed summary judgment evidence shows that UChain's Human Resource managers did not know that there was an issue with Gonzalez's Social Security number until they received Cincinnati's March 29, 2022 email.  The timing is thus governed by the fortuity of Cincinnati's discovery of the discrepancy and its notification of the discovery.  Because there is an intervening event—i.e.,

                                      - 14 -

Cincinnati's email—that explains the close proximity of Gonzalez's disability and the investigation that eventually led to his termination, temporal proximity does necessarily support the inference in this case that UChain's legitimate reason for terminating Gonzalez is pretext for discrimination. *See, e.g.*, *Watson v. Fairfax Cnty., Va.*, 297 F.Supp.3d 591, 604 (E.D. Va. 2018) (If "there is an alternative explanation for the timing of plaintiff's termination that is wholly consistent with defendant's reason for terminating plaintiff," then pretext cannot be established by temporal proximity.).

Regardless, the close temporal proximity between the investigation into Gonzalez's immigration status and UChain's notice of his injury, standing alone, would not enable a reasonable jury to find pretext. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("Timing standing alone is not sufficient absent other evidence of pretext." (citation omitted)); *EEOC v. AccentCare Inc.*, 2017 WL 2691240, at *9 (N.D. Tex. June 21, 2017) (Fitzwater, J.) (holding that "the close temporal proximity of Beasley's termination to AccentCare's initial notice that she had Bipolar Disorder, standing alone, cannot establish pretext.").

4

Even if the court could not conclude that Gonzalez has failed to raise a genuine fact issue on the question of pretext, it would hold nonetheless that UChain is entitled to summary judgment. "[T]here [are] instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. The

plaintiff might create "only a weak issue of fact as to whether the employer's reason was untrue and there [may be] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id*. (citing *Aka v. Wash. Hosp. Ctr*., 156 F.3d 1284, 1291-92 (D.C. Cir. 1998)).  It is "possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000) (citing *Travis v. Bd. of Regents of the Univ. of Tex. Sys*., 122 F.3d 259 (5th Cir. 1997)).

Assuming that Gonzalez has raised a genuine issue of fact concerning pretext, it is a weak issue of fact, and there is abundant, uncontroverted evidence that no disability discrimination occurred.  When Gonzalez notified UChain of his need for modified work duties consistent with his restrictions, UChain granted his request and returned him to work the day he was released by his physician.  UChain did not begin to question Gonzalez's work status until after it received the email from Cincinnati on March 29, 2022.  Even after receiving notice of Gonzalez's undocumented status, UChain continued accommodating his restrictions, while communicating with Gonzalez to resolve his work status issues.  On June 9, 2022, three months after Gonzalez was first placed on modified duty, UChain again granted Gonzalez's updated restrictions and continued to provide him a modified duty assignment.  It was only after Gonzalez failed to comply with repeated requests from UChain's corporate Human Resource managers to prove legal status—which occurred over a four-month period—that UChain terminated Gonzalez's employment.

Gonzalez has failed to introduce evidence that would enable a reasonable jury to find

that UChain's legitimate, nondiscriminatory reason for terminating his employment was pretextual. Accordingly, UChain is entitled to summary judgment dismissing Gonzalez's [ADA and TCHRA] discrimination claims.

IV

Gonzalez contends that he was discriminated against based on his disability under the ADA and TCHRA when he was denied reasonable accommodations.

A

As stated above, the ADA prohibits discrimination in employment against a qualified individual on the basis of his disability. *See* 42 U.S.C. § 12112(a). Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id*. § 12112(b)(5)(A). To prevail on an ADA failure-to-accommodate claim, a plaintiff must show that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotation marks omitted).

B

UChain contends that Gonzalez cannot establish that UChain failed to accommodate his alleged limitations because both the complaint and UChain's summary judgment

- 17 -

evidence establish that UChain placed Gonzalez in a modified duty assignment, consistent with his work restrictions, on each of the two occasions that Gonzalez requested modified duty. Gonzalez has not responded to this ground of UChain's motion. This failure does not permit the court to enter a "default" summary judgment on Gonzalez's failure-to-accommodate claims. *See, e.g.*, *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). But "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2), (3).

Because Gonzalez has not responded to this ground of UChain's motion for summary judgment with specific evidence that would enable a reasonable jury to find in his favor on his ADA or TCHRA failure-to-accommodate claim, the court grants TTEC's motion for summary judgment dismissing these claims.

V

The court now turns to Gonzalez's claim for retaliation under the ADA. This claim is based on the contention that Gonzalez was terminated in retaliation for his requests for reasonable accommodations.

A

Because Gonzalez relies on circumstantial evidence to support his retaliation claim, he must proceed under the same *McDonnell Douglas* burden shifting framework. Gonzalez must first demonstrate a prima facie case of retaliation by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that the trier of fact must find. *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing the prima facie case burden as "minimal").

If Gonzalez establishes a prima facie case, the burden shifts to UChain to articulate a legitimate, nonretaliatory reason for the action taken. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. This burden is one of production, not of proof. *West*, 330 F.3d at 385.

If UChain meets its production burden, the burden shifts back to Gonzalez to produce

evidence that retaliation for his protected conduct, rather than UChain's proffered legitimate nonretaliatory reason, was the "but-for cause" of the adverse employment action. *See, e.g.*, *Seaman*, 179 F.3d at 301 ("Ultimately, the employee [alleging ADA retaliation claim] must show that 'but for' the protected activity, the adverse employment action would not have occurred."). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

B

The court will assume *arguendo* that Gonzalez has established a prima facie case of retaliation. And for the reasons explained above, the court holds that UChain has produced evidence of a legitimate, nonretaliatory reason for terminating Gonzalez's employment. Therefore, the court focuses its analysis on the causation prong of Gonzalez's retaliation claim.

C

To establish a fact issue concerning pretext, Gonzalez relies on the same grounds that he urges in support of his discrimination claims.[8] The court therefore concludes, for the

---

[8]Gonzalez contends:

> For the same reasons discussed above regarding [Gonzalez]'s disability discrimination claim, substantial evidence exists from which a reasonable jury could conclude that UChain's stated reason for termination—immigration status—is pretextual.

reasons already explained, that Gonzalez has failed to raise a genuine issue of fact on the question of pretext or on the ultimate "but-for" showing. Accordingly, the court holds that UChain is entitled to summary judgment dismissing Gonzalez's retaliation claim under the ADA.

\*   \*   \*

Accordingly, for the reasons explained, the court grants UChain's motion for summary judgment and dismisses this case with prejudice by judgment filed today.

**SO ORDERED**.

May 7, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

> UChain's selective enforcement of immigration requirements against [Gonzalez] after he requested accommodation, despite its practice of knowingly hiring undocumented workers, strongly suggests that its stated reason is not the true motivation for its actions.

*See* P. Br. (ECF No. 22) at 18.